United States District Court
Southern District of Texas
**ENTERED**
March 29, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DELIGHT FOODS INC. and UNITED ASSET HOLDINGS CORPORATION, | § § § | |
| *Plaintiffs,* | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-2012 |
| | § | |
| GRACE SUPPLY USA, INC and ECONOMIC FOOD SOLUTIONS PVT. LTD OF INDIA | § § § § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before the Court is Plaintiffs United Asset Holdings Corporation and Delight Foods, Inc.'s (collectively, "Delight" or "Plaintiffs") Motion for Partial Summary Judgment against Defendants Economic Food Solutions Pvt. Ltd of India ("EFS") and Grace Supply USA, Inc. ("Grace") (collectively, "Defendants"). (Doc. No. 29). Defendants responded (Doc. No. 36) and Plaintiffs replied (Doc. No. 41). Defendants also filed their own Motion for Summary Judgment (Doc. No. 31) to which Plaintiffs responded (Doc. No. 35). Having considered the motions, summary judgment evidence, and applicable law, the Court hereby DENIES Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 29) and DENIES Defendants' Motion for Summary Judgment (Doc. No. 31).

### I.    Background

This is a trademark infringement case in which both parties produce, promote, distribute, and sell frozen food bearing the word "delight" in the Indian and Asian grocery market.

a. *Delight*

Since 1998, Delight has produced, promoted, marketed and sold more than 95 million consumer packets of frozen and shelf-stable Indian and Asian food bearing one of its six delight-centered registered trademarks and logos, including DAILY DELIGHT, DESI DELIGHT, SEAFOOD DELIGHT, DELICIOUS DELIGHTS and ETHNIC DELIGHTS (collectively, the "Delight Marks"). Delight is the owner of U.S. Trademark Registration No. 2,331,663 and 3,361,287 for the DAILY DELIGHT word mark and the DAILY DELIGHT logo. Delight also owns four additional U.S. Trademark Registrations (U.S. Trademark Registration Nos. 3,024,362; 3,137,255; 5,234,979; and 5,704,849) for a family of DELIGHTcentric marks that include the DESI DELIGHT, SEAFOOD DELIGHT, DELICIOUS DELIGHTS and ETHNIC DELIGHTS word marks and logos. Delight's U.S. Trademark Registration Nos. 2,331,663; 3,361,287; 3,024,362; and 3,137,255 have each achieved incontestability under 15 U.S.C. § 1065. (Doc. No. 30, Ex. B; Ex. I, J. Parayil Decl. at ¶ 5). Stated more plainly, the DAILY DELIGHT, DESI DELIGHT and SEAFOOD DELIGHT marks and the logos thereto, as applicable, have all achieved incontestability.

Delight alleges that it has continuously produced, promoted, marketed and sold Indian and Asian frozen and shelf-stable food in interstate commerce in the United States with the DAILY DELIGHT trademark since 1998. Delight's DAILY DELIGHT-branded products have had a continuous presence in the marketplace since 1998, and Delight has sold more than 55 million consumer packets bearing the DAILY DELIGHT mark. (Doc. No. 30, Ex. I, J. Parayil Decl. at ¶ 6). Delight produces, promotes, markets and sells over 356 different Indian and Asian food products bearing the DAILY DELIGHT mark in the United States, including aviyal vegetable mix, sambar vegetable mix, baby okra and bitter gourd. (*Id.*). Delight's five top-selling products bearing

2

the DAILY DELIGHT mark include grated coconut, sliced coconut, tender jackfruit, Chinese potato and red onion. (*Id.* at ¶ 8). The sales price paid by end consumers for most of Delight's frozen food offerings is $2.80–$3.15/packet. (*Id.* at ¶ 5).

Delight's existing and prospective customer groups include (a) Indian and Asian grocers and markets; (b) Indian and Asian restaurants and cafes; and (c) the family and individual consumers who purchase products from Indian and Asian grocers and markets. (Doc. No. 30 at 6). Delight alleges that it has more than 1,000 retail Indian and Asian grocers and restaurants, and operates in more than 43 states, including but not limited to Texas, Oklahoma, California, Florida, Arkansas, Arizona, Illinois, Kansas, Michigan, New Mexico, New Jersey and New York. (*Id.*). According to Delight, the frozen food section of a typical Indian and Asian grocer consists of 10–15 doors where similar products are stocked side-by-side. To illustrate this point, Delight attached a photo depicting what consumers see while shopping for frozen products at Indian and Asian groceries. (Doc. No. 30, Ex. D). Notably, consumers see products bearing the Delight Marks, especially the DAILY DELIGHT mark, stocked right next to and often on-top of, beside and below the same food types from other manufactures, including Defendants' products bearing the Instant Delight mark.

  b. *Defendants*

Defendant EFS produces, promotes, markets and sells 21 different Indian food products in the United States, including grated coconut, tapioca, avial mix, jack fruit, pearl onions and sambar mix, each bearing the "Instant Delight" mark. (Doc. No. 30, Ex. N). Grace is EFS' sole distributor of food products in the United States, and Grace promotes, markets and sells 21 different Indian food products in the United States, including grated coconut, tapioca, avial mix, jack fruit, pearl onions and sambar mix, each bearing the "Instant Delight" mark. (Doc. No. 30, Ex. M). All 21

3

food types currently sold by the Defendants bearing the Instant Delight mark are also sold by and have been sold by Delight (these are bulk items). (Doc. No. 30, Ex. J, T. Parayil Decl. at ¶ 4).

It is contested when Defendants began marketing and selling their Instant-Delight branded products in the United States. According to Defendants, "There is no dispute that products bearing the EFS INSTANT DELIGHT logo have been sold in the United States since at least 2012 with documents indicating the products were sold as early as 2005; in the course of discovery, Grace Supply provided substantial written documentation reflecting sales of such products in the United States since 2012." (Doc. No. 31, at 2). At the hearing on these motions, Delight disputed this timeline.

Defendants' customer base for Instant Delight-branded products is also highly concentrated in the Indian and Asian grocer market. (Doc. No. 30, Ex. O, Dep. 44:8–18, 48:25–49:19). Defendants sell Instant Delight-branded products in 10 of the 43 states in which Delight sells its products, although the majority of Defendants' current sales of Instant Delight products are in Texas. (Doc. No. 30, Ex. O, Dep. of Corp. Rep. at 15:7–16:5, 49:12–19).

Grace's customer list and Delight's customer list contain 96 identical or common customers, most of which were Indian and Asian grocers. Of those 96 identical or common customers, Delight alleges that at least 82 (more than 85%) currently purchase, or have purchased in the past, both DELIGHT trademarked products and products bearing the Instant Delight mark.

*C. This lawsuit*

Delight alleges that it has spent more than three decades promoting and marketing its products and its family business as the "Family of Delights" to existing and prospective customers. The common element across the Delight Marks is the word "delight," and over thirty years, and after selling 95 million food packets to this niche market, Indian and Asian grocers and the families

4

that shop there allegedly associate DAILY DELIGHT and the Delight Marks with Delight's business and identify DELIGHT-branded products as originating with and from Delight. (Doc. No. 30 at 9).

Delight's retail store purchasers and direct consumers are allegedly confused by the Instant Delight-branded products, each believing that the Instant Delight-branded products are associated with Delight and the Delight Marks. (Doc. No. 30, Ex. I, J. Parayil Decl. at ¶ 19; Ex. J, T. Parayil Decl. at ¶ 15; and Ex. K, V. Mathews Decl. at ¶¶ 5-8). According to Delight, three different retail store purchasers in Texas have approached Delight to order Instant Delight products, calling and texting Delight's Texas Sales Manager with purchase orders. (Doc. No. 30, Ex. K, V. Mathews Decl. at ¶ 8). Delight received purchase orders and/or requests from (i) Spice N Rice Indian Grocers, located in Carrolton, Texas, (ii) Triveni Indian Supermarket, located in Irving, Texas, and (iii) Maveli Store, located in Stafford, Texas; each believing that Delight produced and/or sold Instant Delight-branded products and attempting to place orders for additional Instant-Delight branded products. (*Id.*).

Delight's Texas Sales Manager, Vinu Mathews, avers that he has received at least 25-30 complaints and inquiries from church friends, family friends and his own family about Instant Delight-branded products. Each approached Mathews believing that Instant Delight-branded products belonged to Delight. According to Mathews, they would then proceed to either (a) complain to him about the drop off in the quality; (b) ask him why DAILY DELIGHT had changed its name; (c) ask him why Delight added a new DELIGHT-branded line to its family of products; or (d) some combination of the foregoing.

Joseph Parayil, a director and owner of Delight, has also avers that he has taken customer service calls from direct consumers in Texas complaining about the quality of what they believed

5

were Delight products. The products, however, turned out to be Instant Delight-branded products sold by the Defendants, and these consumers had mistakenly associated Instant Delight-branded products with Delight. (Doc. No. 30, Ex. I, J. Parayil at ¶ 19).

In addition, according to Teresa Parayil, the Director of Sales and Marketing for Delight, she has similarly identified confusion in the online marketplace. Specifically, certain Indian grocers with online ordering capabilities are conflating and/or associating DAILY DELIGHT-trademarked products with Instant Delight-branded products. When consumers search the online grocer for DAILY DELIGHT, the grocer provides Instant Delight-branded products, conversely, and when consumers search Instant Delight, the grocer provides both DAILY DELIGHT and Instant Delight-branded products. (Doc. No. 30, Ex. H; Ex. J, T. Parayil Decl. at ¶ 15).

Defendants, on the other hand, contend that they have never received any calls or orders for Delight's products, have never had any conversations with retailers confusing its products with Delight's products, and have never received any complaints from any customers that pertained to Delight's products. (Doc. No. 31 at 3).

In 2020, Delight for the first time sent a demand letter to the Defendants to "cease and desist" from selling its Instant Delight products in the United States. Defendants took no action in response. This lawsuit was later filed in 2021 alleging trademark infringement.

## II.    Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

6

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara*, 353 F.3d at 405. It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III.    Evidentiary Objections

Defendants filed a motion to strike several portions of Delight's summary judgment evidence. (Doc. No. 37). As these evidentiary objections may affect the analysis that follows, the Court will address them first.

Specifically, Defendants object to portions of the Declarations of Joseph Parayil (Doc. No. 30-9), Teresa Parayil (Doc. No. 30-10), Vinu Jacob Mathew (Doc. No. 30-11) and Philip Parayil (Doc. No. 30-12). Defendants argue that the objectionable portions of these declarations should be stricken because they contain conclusory and self-serving hearsay statements. These declarations recite conversations that each declarant had with third parties, and Defendants allege that these

7

conversations are being offered "a means to prove what these third parties think of Delight Foods and EFS Instant Delight." (Doc. No. 37 at 2).

As an initial matter, the Court will not consider the objected-to portions of the declarations of Joseph Parayil (Doc. No. 30-9), Teresa Parayil (Doc. No. 30-10), and Philip Parayil (Doc. No. 30-12) for purposes of the summary judgment motions. These portions are vague, unsubstantiated, and contain legal conclusions. Defendants' motion to strike is therefore granted in part as to these objections. As for the declaration of Vinu Jacob Mathew (Doc. No. 30-11), Defendants' main objections to the statements are that they are hearsay under Federal Rule of Evidence Rule 802, are conclusory lacking in personal knowledge under Rule 602, are irrelevant under Rule 402, or are unfairly prejudicial under Rule 403. The Court finds that, for the purposes of summary judgment, the objectionable statements in Mathew's declaration are relevant, not unfairly prejudicial, and can likely be proven up at trial to establish personal knowledge. Thus, Defendants' objections under Rule 602, 402, and 403 are overruled.

The Court will address the hearsay objections briefly. The Court agrees that any statement made by Mathews recounting what he told a third party is an out of court statement offered for the truth of the matter asserted. The Court will not consider these statements. Statements made by a third party to Mathews, however, are different. Mathews described one such statement as follows: "I was at a family friend's party and **they complained to me that Delight's tapioca was not as good as it once was.** When I asked to see the tapioca they showed me an empty 'Instant Delight' package." (Doc. No. 30-9 at 7). This statement is not offered for the truth of the matter asserted (that Delight's tapioca is not up to par). Rather, it is offered for a different purpose (to show that the speaker was mistaken about the brand of tapioca). "The verbal act, as any other act, may be proved by one who heard it, saw it, or felt it." *General Tire of Miami Beach, Inc. v. N.L.R.B.*, 332

8

F.2d 58, 60 (5th Cir. 1964). With verbal acts the "inquiry is not the truth of the words said, but merely whether they were said." *See U. S. for Use & Benefit of Carlson v. Cont'l Cas. Co.*, 414 F.2d 431, 434 (5th Cir.1969). The statement itself (and the fact that it was made to Mathews) is legally significant, independent from the truth of the statement. Furthermore, instances in which customers submitted purchase orders and inquiries related to Instant Delight to Mathews are similarly not hearsay because they have independent legal significance. Thus, the Court will consider these statements in evaluating whether there is a fact issue on actual confusion. Defendants' motion to strike is therefore denied in part as to these objections.

## IV.    Analysis

Delight filed its motion for partial summary judgment arguing that, as a matter of law, Defendants infringed upon Delight's trademarks and engaged in unfair competition. (Doc. No. 30 at 6). Conversely, Defendants filed a counter motion for summary judgment arguing that, as a matter of law, it did not infringe upon Delight's trademarks. (Doc. No. 31 at 8). Additionally, Defendants argue that there is no genuine issue of fact on their laches and waiver affirmative defenses and that these defenses entitle them to summary judgment on all of Delight's claims.

### A.    Trademark Infringement

Section 32 of the Lanham Act provides a cause of action for infringement when, without the registrant's consent, one uses "in commerce, any reproduction, counterfeit, copy[,] or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or to cause mistake or to deceive... ." 15 U.S.C. § 1114(1)(a). To prove infringement, a plaintiff must show that it owns a legally protectable mark and that there is a likelihood of

9

confusion between that mark and the defendants' allegedly infringing material. *Am. Rice Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

        i.     Legally Protectable Mark

Under Fifth Circuit trademark precedent, "the first [inquiry] is 'whether the plaintiff has a protectable property right in the name it seeks to defend from use by others.'" *Sec. Ctr., Ltd. v. First Nat. Sec. Centers*, 750 F.2d 1295, 1298 (5th Cir. 1985) (quoting *Bank of Texas v. Commerce Southwest, Inc.,* 741 F.2d 785, 786 (5th Cir.1984)). To be protectable, a mark must be distinctive, either inherently or by achieving secondary meaning in the mind of the public. *Am. Rice Inc.*, 518 at 329; *see also Sec. Ctr., Ltd.*, 750 F.2d at 1298 (5th Cir. 1985).

Defendants argue that Plaintiffs "do not own the word 'Delight.'" (Doc. No. 36 at 10). Defendants do not dispute that Plaintiffs own the word marks "Daily Delight," "Desi-Delight," "Seafood Delight," "Ethnic Delights" and "Delicious Delight." That said, they argue that merely owning a number of marks combining Delight with another word does not establish any rights in the word Delight as a 'family' name. *See Colony Foods, Inc. v. Sagemark, Ltd.*, 735 F.2d 1336, 1339 (Fed. Cir. 1984) ("That Colony has a number of marks combining HOBO with another word does not establish any rights of Colony in the word HOBO as a 'family' name").

The seminal case defining a family of marks is *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460 (Fed. Cir. 1991):

> A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner. Simply using a series of similar marks does not of itself establish the existence of a family. **There must be a recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods.**... Recognition of the family is achieved when the pattern of usage of the common element is sufficient to be indicative of the origin of the family. It is thus necessary to consider **the use, advertisement, and**

10

**distinctiveness of the marks**, including assessment of the contribution of the common feature to the recognition of the marks as of common origin.

*Id.* at 1463–64 (emphasis added).

Applying this standard here, Delight must demonstrate a "recognition among the purchasing public" that the word "Delight" indicates that the Indian and Asian grocery product originated from them. *See True Fit Corp. v. True & Co.*, No. CIV.A. 12-11006-GAO, 2013 WL 789213 (D. Mass. Mar. 4, 2013) (concluding that the plaintiff had not established that it owned a protectable family of marks because "True Fit [plaintiff] has failed to show that the public associates the word 'true' used in connection with apparel fitting services as indicating a common origin"). The *J&J* court further instructed courts to consider the "use, advertisement, and distinctiveness of the marks" when determining if a family of marks exists.

Here, there is summary judgment evidence that Plaintiffs have been in the marketplace since 1998; have sold more than 55 million consumer packets bearing the DAILY DELIGHT mark; and have sold more than 95 million consumer packets bearing one of the Delight Marks. Plaintiffs sell more than 356 different DAILY DELIGHT products to 1,000 different retail Indian and Asian grocers and restaurants in 43 states and have spent $700,000 marketing and advertising their Delight Marks. (Doc. No. 37 at 54). Additionally, there is evidence that individual consumers, as well as grocers, have mistakenly assumed that Defendants' Instant Delight products are produced, promoted, marketed and sold by Delight. The Court finds that this is enough evidence of recognition among the purchasing public to survive summary judgment on this issue.

Defendants point to *Colony Foods* argue that to owning a number of marks combining Delight with another word does not establish any rights in the word Delight as a 'family' name. Defendants cite the following language to do so:

11

That Colony has a number of marks combining HOBO with another word does not
establish any rights of Colony in the word HOBO as a "family" name. [ ] Since
there is no discernible similarity or pattern in the words combined with HOBO in
Colony's marks, Colony's family of marks theory is, in essence, that there is a
likelihood of confusion between HUNGRY HOBO and HOBO, per se. However,
a critical defect in this argument is that Colony failed to establish, for example by
a survey, **that the term HOBO is used by the public in connection with
restaurant services to identify Colony exclusively**. Colony cannot fault the
board's decision when Colony wholly failed to establish any rights in HOBO, *per
se. See* J. McCarthy, *Trademarks and Unfair Competition* § 23:19 (1973). Thus,
the board's resolution of the claim of likelihood of confusion on the basis of
Colony's most similar mark, HOBO JOE'S, was appropriate.

*Colony Foods, Inc.*, 735 F.2d at 1338 (emphasis added). Additionally, Defendants note that while

courts have not required that a plaintiff provide a survey to prove customer recognition, "survey

evidence can be of great use in helping a court determine the of a family of marks." *Victoria's

Secret Stores Brand Mgmt. v. Sexy Hair Concepts, LLC*, 2009 U.S. Dist. LEXIS 30458, *15-16

(S.D.N.Y. Apr. 8, 2009).

The Court finds these arguments unavailing at the summary judgment stage. First and

foremost, while a survey can be useful in determining a family of marks, a survey is not required.

Despite the lack of a survey, Delight has provided testimony by Mathews that he has received "at

least 25-30 complaints and inquiries from my church friends, family friends and my own family

about Instant Delight branded products. Each of them approached me believing that the Instant

Delight branded products belong to Delight, i.e, that we manufactured and sold these products."

(Doc. No. 30-11). This testimony is some evidence that the term "Delight" is used by individuals

who shop at Indian and Asian grocery stores to identify Plaintiffs. *See Colony Foods, Inc.*, 735

F.2d at 1338. Defendants may challenge the weight and reliability of this testimony at trial;

summary judgment, however, is improper. Finally, the Federal Circuit addressed *Colony Foods* in

*J&J*, and noted that "[w]hile the court pointed out that Colony Foods did not have trademark rights

in "hobo" *per se,* the court did not hold that Colony Foods could not have a family of "hobo"

marks unless it did." *J&J*, 932 F.2d at 1463. Since there is a fact issue on whether Delight owns a protectable family of marks, summary judgment is denied on this issue.

## ii. Likelihood of Confusion

Additionally, each party argues in their respective motions that they are entitled to summary judgment as a matter of law on the second trademark infringement inquiry—whether a likelihood of confusion exists. (Doc. No. 30 at 17, 31 at 8).

The Fifth Circuit assesses likelihood of confusion based on the following "digits of confusion": "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendants' intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (citing *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 170 (5th Cir. 1986)). The court must assess and weigh each digit to determine whether there is a likelihood of confusion. "No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'" *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (quoting *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985).

Here, both parties argue that, as a matter of law, the eight digits weigh in their favor.[1] Plaintiffs assert that they have demonstrated a likelihood of confusion, while Defendants assert that there is no fact issue as to the likelihood of confusion. On weighing these digits at the summary judgment stage, the Court's analysis is simple. Fact issues abound, and these issues must be

---

[1] Defendants actually admit that three digits favor Delight. Defendants admit the following: (i) "Admittedly, the products offered by both the Plaintiff [sic] and Defendant [sic] are very similar products…" ; (ii) the customer base is grocers and "there has been overlap in the sales territory" between the parties; and (iii) "Both parties use print advertisements and Internet promotion … and target the same class of buyers" (Doc. No. 36 at p. 13-14).

resolved by the factfinder. For example, Plaintiff has offered evidence on the seventh digit—actual

confusion. Three retail store purchasers have approached Delight to order Instant Delight products,

calling and texting Delight's Texas Sales Manager with purchase orders. (Doc. No. 30, Ex. K at

8). Additionally, Texas Sales Manager, Matthews, has received complaints and inquiries from

friends and family about Instant-Delight branded products. (*Id.*). On the other hand, Varghese

Kurian, Defendant Grace's corporate representative, stated that Grace is not aware of a single

instance of customer confusion and has never received any calls or orders for one of Plaintiffs'

products. (Doc. No. 31-2 at 2). These instances raise a fact issue on actual confusion. There is

similarly some disputed evidence on the second, third, fourth, and fifth digits as well. Thus, finding

a genuine issue of material fact as to whether a likelihood of confusion exists, the Court does not

find summary judgment to be appropriate on this issue for either party. Thus, both Defendants'

and Delight's respective summary judgment motions are denied as to trademark infringement.[2]

(Doc. Nos. 29, 31).

### B. Affirmative Defenses

The final issue that the Court must address is whether Defendants are entitled to summary

judgment on their affirmative defenses of laches and waiver. Defendants argue that Delight's

claims are barred by both laches and waiver as a matter of law. (Doc. No. 31). Meanwhile, Delight

argues that there are facts in dispute related to these defenses and summary judgment is

inappropriate. (Doc. No. 35). The Court agrees with Delight that fact disputes are present and that

---

[2] In Delight's Motion for partial summary judgment, Delight also moves for judgement as a matter of law on their unfair competition causes of action under 15 U.S.C. § 1125(a) and Texas common law because "the elements for a finding of unfair competition . . . are identical to the elements for establishing trademark infringement." (Doc. No. 30 at 22). Since the Court has denied Delight's motion as to its infringement claims, the Court similarly denies Delight's motion as to its unfair competition claims.

14

Defendants have failed to establish that they are entitled to summary judgment on their affirmative defenses.

First, with regard to waiver, it is unclear whether the Fifth Circuit recognizes a defense of waiver in the trademark context. *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 711 n. 12 (S.D. Tex. 2009) ("It is unclear whether the Fifth Circuit recognizes a separate defense of waiver or estoppel in the trademark context, and the defendants have cited no authority supporting either defense."). Moreover, even if the defense of waiver applies, Defendants have presented no evidence of Delight's "actual intent to relinquish" or "intentional conduct inconsistent with" its rights to enforce its trademarks, as is required by Texas law. *See Ulico Cas. 5 Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Instead, Defendants merely argue that "[b]efore and since the pendency of this litigation, Plaintiffs have engaged in no conduct that is consistent with asserting its claimed trademark rights." (Doc. No. 31 at 8). This argument is discounted by the undisputed fact that Plaintiffs sent Defendants a cease-and-desist letter in 2020 and initiated this lawsuit in 2021 to assert their claimed trademark rights. Defendants' motion for summary judgment is therefore denied as to the waiver affirmative defense.

Second, with regard to laches, there is a genuine factual dispute as to when Plaintiffs learned that Defendants were selling Instant Delight branded products, and as to whether any delay in bringing suit caused prejudice to Defendants. The equitable defense of laches requires proof that Plaintiffs delayed in asserting their trademark rights, that the delay was inexcusable, and that the delay caused undue prejudice to Defendants. *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 334 (5th Cir. 2008). Defendants claim that "Plaintiffs were subjectively aware of the existence of the EFS INSTANT DELIGHT logo in India, and the exportation of products bearing this logo as early as 1998 when the trademark was registered in India and the products

15

were distributed throughout the world." (Doc. No. 31 at 6). In support of this claim, Defendants cite to a declaration by Cyriac Joseph, the founder of EFS. The declaration, however, only states that EFS has owned a trademark for its logo in India since 2004, has imported Instant Delight into the United States since 2005, and started conducting business with Grace in 2012. (Doc. No. 31-3 at 2). The declaration does not state anything about Plaintiffs' knowledge or awareness of these facts. By contrast, Plaintiffs contend that Delight's management first learned that Indian and Asian food products bearing the Instant Delight mark were being sold in Texas at some point during the first quarter of 2020. (Doc. No. 35 at 2). The relevant time frame for laches begins when the Plaintiff "knew or should have known of the alleged infringement … and ends once the trademark owners objects to the defendant's use and the defendant receives notice of the objection." *RE/MAX Intern.*, 655 F. Supp. 2d at 709. Since Defendants have failed to present evidence that Plaintiffs knew or should have known of the alleged infringement before 2020, they have not proven that the laches defense bars Plaintiffs' claims as a matter of law. Defendants' motion for summary judgment is therefore denied as to the laches affirmative defense as well. (Doc. No. 31).

## V.     Conclusion

For the reasons above, having considered the motions, summary judgment evidence, and applicable law, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 29) and DENIES Defendants' Motion for Summary Judgment (Doc. No. 31).  There are genuine issues of fact present, and these issues will need to be tried. The parties are ordered to confer and submit proposed trial dates.

SIGNED at this 29 day of March, 2024.

Andrew S. Hanen
United States District Judge

17